IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

AKINSHEYE FOSTER,

          Defendant.

CRIMINAL ACTION
NO. 12-175-1

**OPINION**

**Slomsky, J.**                                                                                               June 22, 2021

**I.    INTRODUCTION**

       Defendant Akinsheye Foster, who is serving a 168-month sentence of incarceration, moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 89.) In his Motion, Defendant requests either a reduction of his sentence to time served or that he be permitted to serve his initial period of supervised release in home confinement. (See id. at 3.) He argues that the Court should grant his Motion because the COVID-19 pandemic, the conditions at his prison, and his underlying health conditions amount to extraordinary and compelling circumstances justifying his release. (See id.) Defendant also contends that his release would be consistent with the 18 U.S.C. § 3553(a) sentencing factors because he has been rehabilitated and is a non-violent offender. (See id. at 24-27.) The Government opposes Defendant's Motion, citing Defendant's vaccination against COVID-19, his ability to effectively manage his medical conditions while incarcerated, the danger Defendant presents to the community, the seriousness of his underlying offenses, and his lengthy criminal history. (See Doc. No. 92 at 16-31.)

       For reasons that follow, Defendant's Motion (Doc. No. 89) will be denied.

1

## II. BACKGROUND

### A. Defendant's Criminal History

Defendant Foster is presently incarcerated at the Federal Correctional Institution ("FCI") Allenwood in Union County, Pennsylvania for his role in a conspiracy to distribute phencyclidine ("PCP") with co-conspirator Jon Allen. (See Doc. No. 92 at 1-5.)[1] On December 20, 2011, police officers observed Defendant, co-conspirator Allen, and a 13-year-old boy near Allen's deceased grandfather's house in Philadelphia, Pennsylvania. (See id. at 2.) The officers witnessed Defendant and Allen participate in four separate drug sales in which customers would approach the two men, briefly converse with them, and then provide Defendant with cash. (See id. at 2-3.) Defendant would retrieve PCP from a trash can in front of the residence and give it to the customers. (See id. at 3.) These transactions took place within 1,000 feet of the Potter-Thomas Elementary School, located at 3001 North 6th Street in Philadelphia. (See id.)

Shortly after each transaction, officers stopped the customers and recovered from them glass jars, each containing approximately 1.78 grams of PCP. (See id.) After the fourth transaction, the officers arrested Defendant, Allen, and the juvenile and "recovered a bag containing nine glass jars of PCP from the trash can." (Id.) During a search of the house, police discovered and seized two firearms, one of which was loaded with live ammunition, and "another bag containing eight jars of PCP . . . ." (Id.; see also Doc. No. 51 at 16.)[2] In total, officers recovered approximately 7.659 grams of PCP. (See Doc. No. 92 at 3.)

Defendant has three prior convictions for possession with intent to distribute offenses. In

---

[1] FCI Allenwood places inmates in different security level facilities. Defendant is incarcerated at the low level facility. (See Doc. Nos. 89 at 3; 92 at 5.)

[2] Defendant Foster was not charged with a firearm offense in this case. (See Doc. No. 51.) Defendant's co-conspirator Jon Allen, however, was charged with possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). (See id. at 16.)

2000, he was convicted in this District for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g), for which he was sentenced to 92 months' imprisonment, followed by three years' supervised release. (See id. at 3-4; Doc. No. 89-1 at 206-08.) After his release from prison, Defendant "served additional periods in prison upon repeatedly violating supervised release through substance abuse." (Doc. No. 92 at 4; see also Doc. No. 89-1 at 201-05.)

On November 7, 2012, Defendant was charged in Counts 1 through 12 of a 13-count Superseding Indictment for his participation in the instant conspiracy to distribute PCP. (Doc. No. 51.) On November 19, 2012, he pled guilty to all 12 Counts, which included one count of conspiracy to distribute PCP, in violation of 21 U.S.C. § 846 (Count 1); one count of possession with intent to distribute PCP and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 (Count 2); one count of possession with intent to distribute PCP within 1,000 feet of a school and aiding and abetting, in violation of 21 U.S.C. § 860(a) and 18 U.S.C. § 2 (Count 3); four counts of distribution of PCP and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 (Counts 4, 6, 8, and 10); four counts of distribution of PCP within 1,000 feet of a school and aiding and abetting, in violation of 21 U.S.C. § 860(a) and 18 U.S.C. § 2 (Counts 5, 7, 9, and 11); and one count of use of a minor in a drug operation, in violation of 21 U.S.C. §§ 861(a)(2), (b), and (d) (Count 12). (See Doc. Nos. 51 at 1-15; 52; 92 at 2, 4.)

On March 28, 2013, the Court sentenced Defendant to a below-guidelines sentence of 168 months' imprisonment, followed by six years' supervised release. (See Doc. Nos. 75 at 3; 89 at 4; 92 at 5.) When the Government filed its Response to the instant Motion, Defendant had served approximately 110 months of his sentence and had earned approximately 14 months' credit for good conduct. (See Doc. No. 92 at 5.) He is eligible for home detention on November 1, 2022,

and his anticipated release date is May 1, 2023. (See Doc. No. 89-1 at 198.)

Defendant notes that while incarcerated for the instant offenses, he has worked, earned a college degree in Entrepreneurship Management from North Country Community College, and completed drug treatment programs. (See Doc. Nos. 89 at 26-27; 89-1 at 253-57.) He has two disciplinary infractions, the first in 2017 for "us[ing] a phone to arrange for contraband to be thrown over the fence" and the second in 2020 for phone abuse. (Doc. No. 92 at 5; see also Doc. No. 89-1 at 251.)

### B. Defendant's Motion for Compassionate Release

On April 7, 2021, Defendant filed the instant Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 89.) In the Motion, Defendant states that he suffers from "Type-II diabetes, obesity, high cholesterol, gastro-esophageal reflux disease, and chronic pain, and is a former smoker." (Id. at 3.) He claims that these conditions, "combined with the growing coronavirus pandemic in the world and specifically the risk at FCI Allenwood . . . , provide an extraordinary and compelling basis for sentence reduction." (Id.) Despite having received both doses of the Moderna COVID-19 vaccine as of February 3, 2021, Defendant contends that the risk to his health from the virus remains because the vaccine is not 100 percent effective, and it may be even less effective in people with underlying conditions like Defendant, who is severely obese and a former smoker. (See Doc. Nos. 89 at 20-24; 89-1 at 51.)[3]

Regarding the § 3553(a) sentencing factors, Defendant avers that he "has already received just punishment for his ten-year-old non-violent crime," his original sentence "did not contemplate exposure to a life-threatening illness" such as COVID-19, and he has "minimal disciplinary history during his ten years of incarceration." (Doc. No. 89 at 25-26.) Further, he argues that he has

---

[3] In support of this argument, Defendant attached to his Motion affidavits of three physicians. (See Doc. No. 89-1 at 214-22, 224-25, 242-49.)

demonstrated his rehabilitation while incarcerated, pointing to his participation in drug treatment and educational courses, his college degree in Entrepreneurship Management, and his work at the prison. (See id. at 26-27; Doc. No. 89-1 at 253-57.) Defendant also notes that, if released, he will reside with his sister and her 14-year-old son. (See Doc. Nos. 89 at 27; 89-1 at 259.)

### C. The Government's Response in Opposition to Defendant's Motion

On May 10, 2021, the Government filed a Response in Opposition to Defendant's Motion. (Doc. No. 92.) In its Response, the Government argues that Defendant's Motion should be denied because he has been fully vaccinated against COVID-19 and all his medical conditions "appear well-controlled at this time with medication provided by the institution." (Id. at 6; see also id. at 1.) "Moreover, the 3553(a) considerations strongly counsel denial of relief given the danger that [Defendant] presents to the community," the seriousness of his criminal conduct, and his lengthy criminal history. (Id. at 1; see also id. at 26-30.)

Regarding Defendant's medical conditions, the Government attached his sealed medical records to its Response. (See Doc. No. 93.) With the exception of Type II diabetes, the records confirm the conditions Defendant describes in his Motion. (See id.) The Government concedes that Defendant's obesity and history of smoking are risk factors identified by the Centers for Disease Control and Prevention ("CDC") as increasing the risk of an adverse outcome from COVID-19. (See Doc. No. 92 at 16.) It notes, however, that his medical conditions appear at this time to be adequately managed, as evidenced by his Type II diabetes being in remission. (See id. at 6; Doc. No. 93 at 4, 39.) While Defendant "is still prediabetic," he "is fully ambulatory and engages in all normal activities of daily living . . . ." (Doc. No. 92 at 6.)

Notably, Defendant's medical records also show that he "received both doses of the Moderna COVID-19 vaccine." (Id.; see also Doc. No. 93 at 49.) The Government therefore argues that Defendant "no longer presents an 'extraordinary and compelling reason' [for release] because

he has been vaccinated." (Doc. No. 92 at 16.) The Government further notes that while "an inmate who has not been offered a vaccine, who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19" presents an extraordinary and compelling reason, due to Defendant's ability to adequately manage his medical conditions while incarcerated and his vaccination, no extraordinary and compelling reason exists in this case. (Id. at 14; see also id. at 6, 16-22.)[4]

As for the § 3553(a) sentencing factors, the Government submits that Defendant "continues to present a danger to the community, and should be required to serve the sentence that this Court imposed for his criminal conduct" because he "used a 13-year-old boy to distribute PCP in a school zone, outside a house where loaded firearms were kept." (Id. at 26.) Moreover, he has a lengthy criminal history, has committed crimes while on parole or supervised release, and "fails to demonstrate how release, 124 months into a 168-month sentence for a serious drug crime, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense." (Id. at 27; see also id. at 26.)

---

[4] In response to Defendant's contention that the COVID-19 vaccine he received was ineffective, the Government maintains that the vaccine is effective in preventing COVID-19 infection. (See Doc. No. 92 at 17-18.) Defendant "received a vaccine approved by the [Federal Drug Administration ("FDA")] for emergency use based on its conclusion that, in extensive testing, the vaccine was 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19." (Id. at 17.) Moreover, it notes that courts "have almost uniformly rejected" Defendant's arguments that the vaccines may not be 100% effective, that they were not tested in a congregate setting, that they may not be effective for all individuals, and that variants may emerge that bypass the vaccines." (Id. at 22-23.) "Accordingly, the prevailing view is that absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)." (Id. at 23) (citation and quotations omitted). Thus, the Government argues that "[a]t this time, the Court's assessment should be driven by the prevailing scientific view that vaccination makes extremely rare, and possibly eliminates entirely, the risk of severe disease from the virus." (Id. at 25.)

## III. DISCUSSION

### A. The Analytical Framework Regarding Motions for Compassionate Release Pursuant to § 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). There are, however, "a few narrow exceptions" to this general "rule of finality[,]" Freeman v. United States, 564 U.S. 522, 526 (2011), including the compassionate release statute, § 3582(c)(1)(A). As amended by the recently enacted First Step Act, § 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies.[5] See § 3582(c)(1)(A)(i). The statute provides, in part, that a court:

> [M]ay reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .

---

[5] A defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). In other words, before a defendant can make such a request to the court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period. See § 3582(c)(1)(A).

Here, Defendant has met the exhaustion requirement before filing his Motion. On December 31, 2020, he sent a request for compassionate release to the Warden at FCI Allenwood, and on January 12, 2021, the Warden denied his request. (See Doc. Nos. 89 at 5; 89-1 at 210-11.) On April 7, 2021, over thirty days after Defendant submitted the request, he filed the instant Motion for Compassionate Release. (Doc. No. 89.) Because at least thirty days have elapsed from the date the Warden received Defendant's request and denied it to the date Defendant filed the instant Motion, he has met the exhaustion requirement. Additionally, the Government has stipulated in its Response that Defendant has exhausted the statutory requirement. (See Doc. No. 92 at 5.)

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A). Congress, however, has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason. 28 U.S.C. § 994(t). Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission. Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 to § 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances. § 1B1.13 n.1(A)-(C). This Note states:

> Provided the defendant [is not a danger to the safety of any person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

      (ii)    The defendant is—

          (I)    suffering from a serious physical or mental condition,

          (II)    suffering from a serious functional or cognitive impairment, or

          (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant. The defendant

    (i)    is at least 65 years old;

    (ii)    is experiencing a serious deterioration in physical or mental health because of the aging process; and

    (iii)    has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family circumstances.

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13 n.1(A)-(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 n.1(D).[6]

---

[6] Although by its express language § 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement. <u>See generally United States v. Rodriguez</u>, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated

The Application Notes only provide "helpful guidance" and are "not ultimately conclusive . . . ." United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (quoting United States v. Fox, No. 14-03, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019)). Since the Sentencing Commission has not yet amended § 1B1.13 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether there are extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A). See Rodriguez, 451 F. Supp. 3d at 395.

In general, however, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19." United States v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (internal quotation omitted) (quoting United States v. Brooks, No. 07-20047, 2020 U.S. Dist. LEXIS 85671, at *14 (C.D. Ill. May 15, 2020)). In the Third Circuit, this means that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner is incarcerated." Somerville, 463 F. Supp. 3d at 596. Thus, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Id. at 596-97.

---

"extraordinary and compelling reasons" and using § 1B1.13 as "helpful guidance").

If a district court determines that an extraordinary and compelling reason exists, it must then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is warranted and, if so, the extent of such reduction. See id. at 588 ("[T]he Court must weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. § 3553(a)."). Section 3553(a) establishes factors for a court to consider in initially imposing a sentence. Not every factor is applicable, however, when considering a motion for compassionate release. In the instant case, the applicable factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]
>
> . . . [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (6). Therefore, if a balance of a defendant's extraordinary and compelling reasons with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

### B. Defendant's Motion for Compassionate Release Will Be Denied

Defendant's Motion will be denied. Even if Defendant's obesity is an extraordinary and compelling reason for his release, COVID-19 is no longer present to a significant degree at FCI Allenwood. Further, the relevant § 3553(a) factors weigh against a reduction or modification of his sentence.[7] Each of these conclusions is discussed seriatim.

#### 1. Defendant's Obesity May Present an Extraordinary and Compelling Reason for His Release

Defendant contends that he has shown an extraordinary and compelling reason for his release because his "Type-II diabetes, [severe] obesity, high cholesterol, gastro-esophageal reflux disease, . . . chronic pain," and history of smoking, "combined with . . . the risk [of exposure to COVID-19] at FCI Allenwood," place him at a high risk of serious illness or death if infected with COVID-19. (Doc. No. 89 at 3; see also id. at 9-20.)

In its Response in Opposition, the Government concedes that Defendant's obesity and history of smoking are identified by the CDC as COVID-19 risk factors, but it submits that Defendant "no longer presents an 'extraordinary and compelling reason' [for release] because he has been vaccinated." (Doc. No. 92 at 16.) Moreover, the Government notes that, according to Defendant's medical records, "[h]is diabetes is in remission, but he is still prediabetic," and "[a]ll of [his] conditions appear well-controlled at this time with medication provided by the institution." (Id. at 6; see also Doc. No. 93 at 4, 39.)[8]

---

[7] Because the Court will deny Defendant's Motion for the reasons given, it is not necessary to determine whether a reduction in Defendant's sentence would be consistent with applicable policy statements of the Sentencing Commission.

[8] Despite Defendant's assertion in his Motion that FCI Allenwood "experienced a major outbreak of the virus in December 2020 and January 2021," no actual, non-speculative risk of contracting COVID-19 at FCI Allenwood presently exists. (Doc. No. 89 at 7.) In the Government's Response in Opposition filed on May 10, 2021, it notes that "[a]t present, there are no inmates who are reported positive" in the institution out of a total of 896 inmates, and

For purposes of this Motion, the Court will assume, without deciding, that Defendant's obesity presents an extraordinary and compelling reason for his compassionate release in light of the COVID-19 pandemic.[9] Because the Government concedes that Defendant's obesity presents a COVID-19 risk factor, and the Court will consider this as an extraordinary and compelling reason for his release, the Court need not address whether his other medical conditions also meet this threshold. However, the Court notes that other courts have rejected claims of extraordinary and compelling reasons for release based on obesity, both alone and in conjunction with some of Defendant's other medical conditions. See, e.g., United States v. Wilfred, No. 07-351, 2020 WL 4365531, at *1, *5 (E.D. La. July 30, 2020) (finding severe obesity is neither an extraordinary nor compelling reason for release); United States v. Williams, No. 15-471-3, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020) (determining obesity with BMI of 31.5 kg/m$^2$ does not meet extraordinary and compelling reasons for release); United States v. Jones, No. 2:18-137, 2020 WL 3969912, at

---

"[t]here are 276 current inmates who previously tested positive and have recovered." (Doc. No. 92 at 8.) As of the filing of this Opinion, there are no inmates at FCI Allenwood who currently have COVID-19. See COVID-19 Cases, FEDERAL BUREAU OF PRISONS (June 22, 2021), https://www.bop.gov/coronavirus/. These current numbers "are based on the most recently available confirmed lab results involving open cases . . . ." Id. (emphasis omitted). Given this information, COVID-19 is no longer present to a significant degree at FCI Allenwood. For this reason, and because the § 3553(a) sentencing factors weigh against a reduction or modification of Defendant's sentence, his Motion will be denied. See United States v. Phillips, No. 09-718, 2020 WL 5076753, at *4 (E.D. Pa. Aug. 27, 2020) ("Even if [defendant's] particular combination of medical conditions . . . place him at a high risk, . . . [he] would not be entitled to a compassionate release due to his history of violence and because he has not demonstrated a more than mere speculative risk of exposure to COVID-19 at FCI Fort Dix.").

[9] The CDC notes that a Body Mass Index ("BMI") of 40 kg/m$^2$ or greater constitutes severe obesity and is an actual COVID-19 risk factor. See People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL AND PREVENTION (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Defendant is 66 inches tall, and on March 25, 2021, he weighed 269 pounds. (See Doc. No. 93 at 4, 30.) Based on his height and March 2021 weight, Defendant's BMI is 43.4 kg/m$^2$, which is above the CDC's severe obesity threshold. (See id.)

*4 (N.D. Ind. July 14, 2020) (finding obesity with BMI of 38, Type 2 diabetes, high cholesterol, and hypertension "do not qualify as extraordinary or compelling reasons to reduce [defendant's] sentence or place him on home confinement," especially where conditions can be managed in prison); United States v. Snell, No. 17-602, 2020 WL 4053823, at *2 (D. Md. July 20, 2020) (denying defendant's motion for compassionate release, noting that prediabetes and gastro-esophageal reflux disease do not increase vulnerability to COVID-19).

Moreover, courts in this District have denied compassionate release, in part, because the defendant had been—or would soon be—vaccinated against COVID-19. See, e.g., United States v. Limehouse, No. 08-0223-1, 2021 WL 1387756, at *6 (E.D. Pa. Apr. 13, 2021) ("FCI Cumberland is . . . in the process now of inoculating both its staff members and its inmate population with the COVID-19 vaccines."); United States v. Slone, No. 16-400, 2021 WL 1374634, at *1 (E.D. Pa. Apr. 12, 2021) ("To the extent Mr. Slone believes his asthma puts him at risk for COVID-19, the risk is mitigated having received two doses of the effective Moderna vaccine and he otherwise does not present health concerns rising to the level of extraordinary and compelling reasons for release."); United States v. Roper, No. 16-335, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021) ("[T]he [BOP] medical staff is actively treating and successfully managing Mr. Roper's conditions, and, perhaps most importantly, the Bureau provided the first of two vaccination shots several weeks ago and no one suggests delay in the second shot. Mr. Roper does not present an extraordinary and compelling reason for his release."); United States v. Ulmer, No. 18-00579-3, 2021 WL 844579, at *3 (E.D. Pa. Mar. 5, 2021) ("Ulmer's request for compassionate release has no merit in fact or law. He presents minor health concerns and his recovery from COVID-19 and vaccination significantly outweigh any issues at FPC

Lewisburg.").[10]

### 2. The § 3553(a) Sentencing Factors Do Not Weigh in Favor of Defendant's Release

Assuming, arguendo, that Defendant's obesity presents an extraordinary and compelling reason for his release, the relevant § 3553(a) factors do not support either Defendant's compassionate release to home confinement or a sentence reduction. As a threshold matter, other courts in this District have denied compassionate release in similar cases where, despite extraordinary and compelling circumstances warranting a defendant's release, the § 3553(a) sentencing factors heavily weighed against granting such relief. See, e.g., United States v. Spivey, 471 F. Supp. 3d 621, 623 (E.D. Pa. 2020) (footnote omitted) (denying compassionate release based on § 3553(a) sentencing factors despite "assum[ing] . . . that [d]efendant's underlying health conditions . . . present extraordinary and compelling reasons for compassionate release in light of the COVID-19 pandemic."); United States v. Phillips, No. 09-718, 2020 WL 5076753, at *4 (E.D. Pa. Aug. 27, 2020) ("Even if [defendant's] particular combination of medical conditions . . . place him at a high risk, . . . [he] would not be entitled to a compassionate release due to his history of violence . . . ."); United States v. Daniels, No. 15-127, 2020 WL 4674125, at *2-4 (E.D. Pa. Aug. 12, 2020) (denying compassionate release despite Government's concession that defendant's obesity was an extraordinary and compelling reason for release because, inter alia, the risk of exposure to COVID-19 at defendant's prison was merely speculative and he continued to be a danger to the community); United States v. Holmes, No. 08-495, 2020 WL 4504440, at *3 (E.D. Pa. Aug. 5, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)) ("Even if defendant has the requisite serious

---

[10] Defendant is 43 years old. (See Doc. Nos. 89 at 3; 92 at 6.) He does not suffer from a terminal illness or a serious cognitive impairment, and he is not a caregiver to minor children. See § 1B1.13 n.1(A)-(C). Thus, the factors listed in this section of the Sentencing Guideline Manual are not relevant here. See id.

15

medical conditions, the [c]ourt's analysis does not end here. . . . [T]he [c]ourt [must] consider the 'factors set forth in section 3553(a) to the extent they are applicable' before [it] may reduce [defendant's] sentence. These factors . . . . support the need for [defendant] to serve the sentence imposed.").

Turning to the § 3553(a) sentencing factors and their application to Defendant, the relevant sentencing factors counsel against Defendant's release at this time. First, the Court has examined the nature and circumstances of the offense and Defendant's history and characteristics. See § 3553(a)(1). Defendant pled guilty to and is presently incarcerated for twelve charges arising out of his participation in a conspiracy to distribute PCP within 1,000 feet of an elementary school. (See Doc. No. 92 at 1-3.) Although Defendant's crimes were non-violent, he "used a 13-year-old boy to distribute PCP in a school zone, outside a house where loaded firearms were kept," and thus was "engaged in prohibited conduct that presented a significant danger to the community" at the time of his offense. (Id. at 26.)

Defendant also has three prior convictions for drug offenses and has "served a lengthy federal sentence for possession of a firearm by a convicted felon." (Id. at 27; see also id. at 3-4.) Moreover, he has shown a propensity to reoffend while under court supervision, as he committed crimes while on supervised release or parole and was reincarcerated following his release from prison for his federal firearm conviction after "repeatedly violating supervised release through substance abuse." (Id. at 4; see also id. at 27.) While incarcerated for the instant offenses, Defendant received a disciplinary infraction for "us[ing] a phone to arrange for contraband to be thrown over the fence" of the prison. (Id. at 5.) Although Defendant claims that he is rehabilitated, given all this background, there is no assurance that he would refrain from criminal activity if released. In sum, he is still a danger to the community.

Second, the Court has considered whether Defendant's release would reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by him. See § 3553(a)(2)(A)-(C). Defendant has served approximately seventy percent of his total sentence of incarceration. (See Doc. No. 89-1 at 199.) However, the magnitude of his crimes and his criminal history warrant the entire sentence he received.[11] Although Defendant contends that his demonstrated rehabilitation during his incarceration "reflects his ability to abide by the rules" (Doc. No. 89 at 26), a reduction in his sentence at this point would not serve any of the above considerations.

Finally, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. See § 3553(a)(6). Defendant received a 168-month sentence, below the range set by the Sentencing Guidelines which Congress created to address sentencing disparities. The sentencing range was 188 to 235 months' imprisonment. (See Doc. No. 92 at 5.) To reduce Defendant's sentence further would not reflect the Sentencing Commission's goal of avoiding unwarranted sentence disparities among similarly situated defendants and ensuring consistent punishment for similar offenses.

Therefore, none of the applicable § 3553(a) factors favor either Defendant's release to home confinement or a sentence reduction.

---

[11] In United States v. Pawlowski, 967 F.3d 327, 331 (3d Cir. 2020), the Third Circuit Court of Appeals held the following regarding 18 U.S.C. § 3582(c)(1)(A) and its requirement that a court reviewing a motion for compassionate release consider the § 3553(a) factors to the extent they are applicable:

> Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. No. 89) will be denied. An appropriate Order follows.